HORTON MOTOR LINES, Inc., v. CURRIE.
No. 4190.

United States Circuit Court of Appeals,
Fourth Circuit.

Sept. 27, 1937.

Robert Lewis Young and Leith S. Bremner, both of Richmond, Va. (Thomas O. Moss, of Richmond, Va., on the brief), for appellant.

Thomas A. Williams, of Richmond, Va. (L. C. O'Connor, of Richmond, Va., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and H. H. WATKINS, District Judge.

## H. H. WATKINS, District Judge.

A proper consideration of the issues raised by this appeal requires a somewhat detailed statement of the facts. There is, however, but little conflict in the testimony. Hereinafter in referring to the parties, appellee will be designated as plaintiff and appellant as defendant in accordance with the positions which they occupied in the court below. At the conclusion of the evidence both sides submitted motions for directed verdicts which were refused, and the case was submitted to a jury which returned a verdict against the defendant in the sum of $7,500. A motion to set aside the verdict and grant a new trial was overruled. The defendant assigns error on the part of the court in refusing to direct a verdict in its favor and also in refusing to set aside the verdict. It further assigns error to the court in refusing to charge the jury on the doctrine of sudden emergency and on the doctrine of equal probability as to the cause of plaintiff's disability. The accident in question occurred on Cary street in the City of Richmond, Virginia, on September 20, 1935, at or shortly after two o'clock in the afternoon. This street runs east and west with an eastward declivity between Thirteenth and Fourteenth streets, at the point where the accident occurred. This section of the street is lined with wholesale produce houses and is very much congested with traffic, especially on each Friday, the day of the week on which the accident occurred. Cars or trucks were parked on each side of the street and although there was room between these for vehicles to pass each other, it is, as stated by the driver of the defendant's truck, "tight in there. A lot of traffic." The accident occurred on the south side of the street in front of the establishment of Ahern and Carpenter. One of their customers, Terrell by name, had parked his small Dodge truck in front of the aforementioned store. The evidence shows conclusively that it was properly parked with the right front wheel turned to the right against the curb in order, as one of the witnesses said, "to chuck it" or prevent its rolling down hill, and with the right rear wheel about eight inches from the curb. Under permission of an ordinance of the City of Richmond, Ahern and Carpenter had stacked in front of their place of business, adjacent to the curb, fifty or sixty crates of honeydew melons, each weighing fifty to sixty pounds, to a height of four, five, to six feet and extending some distance along the curb. The plaintiff passing in front of the store had stopped to converse with L. B. Martin, one of Ahern and Carpenter's salesmen, and was standing with his back to the crates of melons. At this time Norman Berger, going eastward, came by driving a truck belonging to Horton Motor Lines, Incorporated, consisting of a Ford tractor and trailer, admittedly of an aggregate length of twenty-two to twenty-six feet and nine feet in height. The witnesses described this truck in various terms, as "a great big truck," "a great long truck," one of the witnesses stating that it was "a great big bodied truck, a tremendous body." When this vehicle had almost passed the Terrell truck, a collision occurred which resulted in the latter being driven on to the sidewalk and against the crates of honeydew melons, causing them, as one of the witnesses described it, to "landslide" over and upon the plaintiff, knocking him to the pavement, and also knocking Martin to his knees. The testimony is to the effect that Berger had a previous good record for safe driving and that as soon as he

proceeded down the street far enough to find a parking place, he returned to ascertain what damage had been done. He stated that at the time of the accident he was going very slowly, not over two miles an hour, and that he could have stopped his truck within two or three inches, or within six inches, before hitting the other but that he would have blocked traffic if he had done so; that he thought he was going to pass it and took a chance. Berger's statement of how the accident occurred was that at the time he was meeting another truck belonging to the North Carolina Trucking Company; that its driver, Barnwell, crowded him as close as he could and that he (Berger) gave in to him as much as he could; and that a hinge on the back door of his trailer hooked the little angle part that sticks out from the side body of the Dodge and moved it. It is significant in this connection that no claim was made that Barnwell was going at an excessive speed, that he made any sudden turn, or that he was driving in a reckless or negligent way. It is a fair inference from the testimony that both Barnwell and Berger were proceeding deliberately and slowly and that they were, as they must have been, fully aware of the congested condition of the street and that they had ample time to choose deliberately what course to pursue.

The greatly preponderating and practically uncontradicted testimony is to the effect that before the accident occurred plaintiff was a capable, industrious worker, who had been engaged for many years in various jobs with but little loss of time on account of illness. At the time of the injury he was an automobile salesman and had been engaged in this employment for almost nine months. Previously he had served since 1927 in a filling station, waiting on customers, putting in batteries, repairing tires, greasing automobiles, putting on and taking off chains, etc. This was not light work. Prior to that time he had worked in the boiler shop of the C. & O. Railway Company at heavy work for eighteen months. One of the witnesses stated that he had known Currie for about twenty-five years before the accident and that: "He was one of the strongest young men I have ever known. He was as able to do a good hard day's work as any man I have ever known." The testimony is uncontradicted to the effect that when the plaintiff was knocked down the melon crates were piled on top of him and that he was assisted to rise and to go into the nearby store. When the accident occurred he exclaimed: "Oh, My God, I believe I have broken my back." He was taken home and attended by a physician. He was put to bed and remained there for some time. His back was acutely painful, perfectly stiff, and he could not move around without a lot of pain. About two weeks after the accident his back was strapped in an effort to give him some relief, and later on he obtained a belt which also failed to relieve him, and he was then put in a plaster jacket running from armpits to waist. This was kept on him until March 14, 1936, when it was replaced by a steel brace to support his back with an abdominal pad. At the time of the trial he was still wearing this brace, and the orthopedic surgeon who attended him stated that he would not be surprised if this had to be worn as long as the plaintiff was doing anything active. Various surgeons who examined him, or took X-ray pictures of him, found an arthritic condition to which defendant's counsel endeavor to attribute the cause of plaintiff's disability. However, the evidence shows conclusively that plaintiff was seriously injured in consequence of the accident, and that even if he had a more or less serious arthritic condition when injured, it was greatly aggravated by his injuries. He spent hundreds of dollars for medical treatment and lost hundreds of dollars more in salary and wages, in addition to his suffering, and several of the medical witnesses testified that in their judgment his injuries are permanent. He was unable to work for thirteen months following the injury.

Defendant's motion for a directed verdict was based upon the following claims: First, that plaintiff's evidence failed to reveal any negligence which could be the proximate cause of the injuries complained of; second, that no injuries were shown; and, third, that the evidence failed to disclose any causal connection between the accident and the alleged injuries. The foregoing statement of evidence makes it clear that this motion was properly refused.

The motion to set aside the verdict further charged error because of the court's failure to give certain instructions, the grounds for the refusal of which will be disposed of later on in this opinion.

■ The charge of the court was an admirable presentation of the law upon all of the issues involved and was certainly as favorable to the defendant as the law justified. Indeed, we are of the opinion that the court might well have further elaborated its instructions by reference to the greater care required of one in charge of so powerful and so dangerous an agency as a large truck with a trailer while traversing such a narrow and congested street. While admitting that the force imparted by defendant's truck was the cause sine qua non of the accident, defendant's counsel argues that an analysis of the chain of its causation reveals its links to be so improbable that the element of proximate cause, essential to plaintiff's case, is wanting. The following quotation from defendant's brief shows how far the contention is strained to take care of defendant's case: "Had not the Dodge truck been parked with the rear wheels some distance from the curb there would have been no accident; had the front wheels of the Dodge truck been straight it would not have gone upon the sidewalk; but for the hill the Dodge truck would not have continued to roll until it struck the melons, and had not the melon crates been piled so high they would not have fallen upon the plaintiff." As above stated, the Dodge truck was properly parked, was in plain view, as were the melon crates and as was obviously the hill complained of. It must also have further been obvious to the experienced driver of the Horton truck that if he ran against the Dodge truck on this hill with the great weight of his own vehicle it would in all probability result in a serious accident. His miscalculation of the proximity of the end of the long trailer of his car to the Dodge truck as he descended the hill was his own fault for which the defendant was responsible and all of the consequences resulted naturally and proximately therefrom and might have been easily anticipated. In this connection, we think it proper for this court to call attention to the extra danger caused by these trailers attached to motor vehicles as they traverse the streets and highways. Their length and weight, accompanied by extra power, vests them with extra force, but should not vest them with extra privilege. It is particularly true, when changing the course of the tractor to right or left, that it is most difficult to calculate with exactitude the effect upon the trailer, and this very fact, in the exercise of ordinary care, requires greater precaution.

In disposing of defendant's motion for a new trial because of the court's refusal of instructions asked for by defendant upon the doctrine of equal probability, the court said: "This is not a case where the plaintiff claimed damages for injuries which may have resulted from one or two independent causes for one of which the defendant is responsible and for the other of which the defendant is not responsible. Here under the facts most favorable to the defendant, the plaintiff was claiming damages due to an exaggeration of a pre-existing condition. The jury was fully instructed on this point." The cases cited in appellant's brief in an effort to sustain the appeal upon this point fall short of reaching the issue. Here no question is made of the fact that the defendant set in motion the force that caused the accident. Upon this issue the jury was not left to speculate or to attribute the accident to one of two or more separate causes. The sole question was whether defendant's act was negligent, and upon proper instructions and convincing evidence the jury concluded that such negligence existed. Nor can there be any doubt as to the seriousness of plaintiff's injuries. While defendant did attempt to show that plaintiff's condition was caused to some extent by arthritis rather than by the accident, the jury was properly instructed upon that point also and there was ample evidence to sustain the verdict to the effect that the plaintiff was seriously injured as a result of the accident and that the issue raised by the defendant could properly reach no further than the question of an exaggeration of a pre-existing condition.

■ While the courts recognize in proper cases the doctrine of sudden emergency or exceptional circumstances, we find no case in which such doctrine has been applied upon evidence similar to the present case. In order to justify a resort to the defense of sudden emergency or exceptional circumstances there must be an absence of opportunity for mature deliberation. The case of Jones v. Boston, etc., Railway Co., 83 N.H. 73, 139 A. 214, 221, is in point. This case related to the conduct of a railroad engineer, and the court said: "The presence of highway travelers at or near railroad crossings is always to be expected, and is one of the things for which an engineer is, or should be, constantly on the lookout. When his

vigilance results in the discovery of such a situation, it is true that he is called upon to act quickly, but with reference to a foreseen, and not unusual, peril. ·The benumbing effect of surprise and terror, which may accompany the sudden appearance of a wholly unexpected danger, should not, therefore, be present in his case. He should act with ·the care of a man trained to meet just such situations, not with the terror-stricken precipitancy of one who is suddenly confronted with an unforeseen peril." The instant case presents neither an unforeseen situation nor a sudden emergency, and defendant's representative, although claiming that he was crowded by the Barnwell truck, states that his real reason for his conduct in not stopping was his desire to avoid blocking traffic, and that his striking the Terrell truck was due to his opinion that he could safely pass it and that he took a chance. He said: "I just figured after I cleared it that long, I figured that the whole job was going to come through. * * * I couldn't see. * * * I thought I was going to pass it." In the case of Allen v. Schultz, 107 Wash. 393, 181 P. 916, 6 A.L.R. 676, it is held that: "One is liable for injuries inflicted upon another by extricating himself from a perilous situation in which he has placed himself by his own negligence." In the case of Lemay v. Springfield Street Railway Co., 210 Mass. 63, 96 N.E. 79, 37 L.R.A.(N.S.) 43, it is held that one is not excused from all error of judgment by the fact that he is compelled to act immediately upon sudden emergency, but he is required to use due care under all circumstances. An "emergency" is a sudden or unexpected happening or occasion calling for immediate action. All the authorities agree that the presence of danger must be imminent, leaving no time for deliberation. Burger v. Omaha & C. B. St. R. Co., 139 Iowa 645, 117 N.W. 35, 130 Am.St.Rep. 343; Kleiber v. People's R. Co., 107 Mo. 240, 17 S.W. 946, 14 L.R.A. 613; 20 R.C.L. title Negligence, § 22, p. 29; 45 Corpus Juris, title Negligence, pp. 710 to 713, inclusive; Carpenter v. Campbell Automobile Co., 159 Iowa 52, 140 N.W. 225; Fogg v. N. Y., N. H. & Hartford R. Co., 223 Mass. 444, 111 N.E. 960.

We have carefully examined the authorities cited in appellant's brief, and while the law therein is correctly stated, they add no force to defendant's case for the reason that the doctrine invoked therein related only to sudden emergencies, although different from the situation presented in this case.

Affirmed.