ADAM HILZER, JR., APPELLANT, v. FARMERS IRRIGATION DISTRICT, APPELLEE.

56 N. W. 2d 457

Filed January 2, 1953.     No. 33232.

*Mothersead, Wright & Simmons,* for appellant.

*Neighbors & Danielson,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Adam Hilzer, Jr., brought this action in the district court for Scotts Bluff County against the Farmers Irrigation District. The purpose of the action is to recover for damages to his personal property, consisting of farm machinery, equipment, and tools, done by water escaping from defendant's canal. The grounds on which plaintiff based his rights were defendant's failure to warn him of a break in its canal and failure to open waste gates along its canal, it being plaintiff's thought that if notice had been given he could, in a short period of time, have moved the machinery, equipment, and tools to higher ground and saved it from loss or damage by the escaping water.

A jury returned a verdict for the defendant.

The plaintiff thereupon filed a motion for new trial and, from the overruling thereof, has perfected this appeal.

The appellee is an irrigation district organized under the laws of the State of Nebraska and will be referred to as the district. The district was organized in 1906. It then commenced building its main canal which, when completed, was about 80 miles long. The main canal extends from a point about 1 mile east of the Wyoming border, near Henry, Nebraska, to a point about 8 miles

east of Bayard, Nebraska. Where it crosses the northwest quarter of Section 7, Township 22 North, Range 54 West of the 6th P. M., in Scotts Bluff County, which is north and east of the city of Scottsbluff, the canal is about 40 feet wide at the bottom, about 55 to 60 feet wide at the top, and capable of carrying 1,200 second-feet of water when flowing at capacity. As it passes through this quarter section the top of the south bank of the canal is about 24 feet wide. A road is located thereon. The area south and immediately adjacent to the canal, at the location above described, is not in a drain or draw but is tableland sloping generally to the south.

"* * * the owner of an irrigation ditch or canal is required to exercise ordinary care in the construction, maintenance, and operation thereof. Otherwise stated, the measure of care which he is bound to use is that which ordinarily prudent men exercise under like circumstances when the risk is their own, or such as a prudent man, with due regard for the rights of others, and the risk of his undertaking, would exercise in conveying through an artificial channel a substance such as water, that possesses detrimental and destructive as well as beneficial and productive qualities, unless properly restrained. If the requisite degree of care is not exercised, the proprietor may be held liable for all damage proximately resulting from the wrongful act or omission, * * *." 30 Am. Jur., Irrigation, § 57, p. 639.

We think, if it becomes apparent to those operating an irrigation canal that a dangerous condition has developed in the operation thereof which is liable to cause injury, where a warning would be effective to prevent that injury, there is a duty to warn.

As stated in 65 C. J. S., Negligence, § 89, p. 598: "Where a person is performing an act or engaging in an operation which is likely to be dangerous to persons in the vicinity, it is his duty to warn such persons of the danger, * * *."

In Zimmer v. Brandon, 134 Neb. 311, 278 N. W. 502, we quoted the following from Lisle v. Anderson, 61 Okl. 68, 159 P. 278: "'Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person, rightfully there, will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises; and, if such care is not exercised by the party on whom the duty rests and injury to another person results therefrom, liability on the part of the negligent party to the person injured will generally exist, in the absence of any other controlling element or fact, and this, too, without regard to the legal relationship of the parties.'"

We will first consider the district's contention that appellant failed to make a case. In considering that question the following rule is applicable:

"A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569.

On June 24, 1951, the district was under the supervision of E. O. Daggett, the general manager who lived in Scottsbluff, Nebraska. Immediately under his supervision were three division superintendents. To facilitate operations the district had been divided into three divisions, one of the division superintendents being in charge of each. The district usually employed between 35 and 45 people. Normally it has about 21 ditch riders and 9 to 11 members of repair crews.

Division superintendent William Johnson was in charge of the area which included the south half of the

northwest quarter of Section 7, Township 22, Range 54 West of the 6th P. M., in Scotts Bluff County, which will hereinafter be referred to as the Pickering land. Immediately under his supervision were 9 ditch riders and at least 3 members of a repair crew.

On Sunday, June 24, 1951, there was a rain in the area immediately north of the district's main ditch. It ranged from north of Mitchell east to just north and east of Scottsbluff. It commenced about 3 p. m. and reached unprecedented proportions. By 6 p. m. it had ceased. The rain was estimated at various places in this area to have ranged from 3½ to 9 inches. It caused immediate flooding.

The flood waters resulting from this rain started to reach the district's main canal by 5:30 p. m. and by 6:30 p. m. the canal, at the point of the break on the Pickering land, was completely filled. Just prior to the rain the canal, at this point, had been carrying about 360 second-feet of water.

As soon as it became apparent that there would be trouble from flood waters all of the district's employees were called out. This was shortly after 6 p. m. The employees proceeded to patrol the main canal. They remained on the job until 3 a. m. on June 25. During the course of the evening several breaks occurred in the main canal including the break on the Pickering land.

Appellant was farming the southwest quarter of Section 18, Township 22 North, Range 54 West of the 6th P. M., in Scotts Bluff County. The farmstead on this quarter section of land is located in the northeast part thereof. It is at the head of a canyon where the land breaks from the table down to a lower level. The farmstead is located about a mile and a quarter south of where the break occurred on the Pickering land.

About 8 p. m. one of the district's employees noticed the canal, where it crossed the Pickering land, was running over its south bank and, shortly thereafter, he

noticed the amount running over the bank had very materially increased. There is evidence that the general manager was also aware of that fact and that about 8 p. m., or shortly thereafter, he notified one of the members of the district's board of directors that the canal was running over north of his place, which was on the Pickering land. There is also evidence from which the jury could reasonably infer that shortly after 8 p. m. both general manager Daggett and division superintendent Johnson knew there had been a break in the canal on the Pickering land.

Maps which were in the possession of the district show the topography of the area south of where the break on the Pickering land occurred. They indicate the water from the break would first flow southwest; then almost west across the road between Sections 7 and 12; then south; then east across this same road onto the southwest quarter of the southwest quarter of Section 7; then south across the road between Sections 7 and 18 onto the northwest quarter of the northwest quarter of Section 18; then in a general southeasterly direction across the northwest quarter of Section 18 until it reached the southeast quarter thereof; and that then it would divide and flow partly across the southwest quarter of the northeast quarter of Section 18 and partly through a canyon break located on the northeast corner of the southwest quarter of Section 18 at the head of which appellant was living.

After general manager Daggett had talked by telephone with Jerry Hays, a member of the district's board of directors who lived just south and east of the Pickering land, advising him that the canal was running over north of his place, Hays went out to see what the conditions were. He found that a break in the canal bank had occurred on the Pickering land and that water was rushing from the break and flowing to the southwest. He immediately notified two farmers, Simon Anderson and Henry Burbank who lived in the area he thought

would be flooded, of the break but neither he nor anyone else notified the appellant thereof, although appellant had a telephone that was in working condition and Hays knew where the farm buildings in which appellant lived were located.

The evidence shows that some of the water escaping through the break in the district's canal on the Pickering land flowed through the canyon, at the head of which the appellant lived, and caused serious damage to his equipment, machinery, and tools.

There is evidence in the record that would sustain a finding that if appellant had been notified of the break in the canal within a reasonable time after it occurred he would have had time to move his equipment, machinery, and tools to higher ground, which was nearby, and thus have prevented damage thereto.

"Negligence is a failure to do what reasonable and prudent persons would ordinarily have done under the circumstances and situation, or doing what reasonable and prudent persons under the existing circumstances would not have done." Mundy v. Davis, 154 Neb. 423, 48 N. W. 2d 394.

There are facts contrary to those hereinbefore set forth. Consequently, we find the record presents a question that a jury must decide; that is, were those in charge of the canal negligent in failing to warn appellant of the break therein on the Pickering land, and if so, was such failure the proximate cause of appellant's damages?

As stated in Maize v. Atlantic Refining Co., 352 Pa. 51, 41 A. 2d 850, 160 A. L. R. 449, by quoting from Ebbert v. Philadelphia Electric Co., 330 Pa. 257, 198 A. 323: " 'The test to determine whether there is liability in an action of tort is in the answer to the question whether the defendant by an act or omission injured another by disregarding a duty imposed by law in respect to that other.' "

And as stated in Smith v. Twin State Gas & Electric Co., 83 N. H. 439, 144 A. 57, 61 A. L. R. 1015: "It had

the duty of due care to warn him about it if it had reasonable opportunity to give warning after the danger existed, and due care called for warning if there was enough chance of danger to the decedent to prompt men of ordinary prudence in the defendant's place to warn him."

In view of what we have hereinbefore said it became the duty of the court to instruct the jury upon the issues presented by the pleadings which found support in the evidence.

The court was correct in not submitting the issue raised by appellant's claim that the district was negligent in failing to promptly open the waste gates along its canal in order to reduce the flow of water. The evidence, without dispute, shows that all waste gates were opened, sluiceways near the headgate opened, the headgate shut off, and, insofar as possible, they, including overflow spillways, were kept clear of debris. This was done as soon as danger of overflow threatened and continued as long as it served any useful purpose.

The court was also correct in submitting the issue raised by appellant's claim that the district failed to warn him of a break in its canal. However, in addition thereto the court submitted the issue of the district's failure to warn appellant of the imminent danger of its canal breaking. No such issue was pleaded. It is true that appellant attempted to amend his petition to include such issue but the trial court refused the request. There was evidence in the record at the time which would support such a claim. Appellant makes no contention that he was prejudiced thereby, nor could he successfully do so since it was favorable to him. Nevertheless, since the cause must go back for retrial for other reasons, we merely point out this error to prevent its repetition. This issue should not be again submitted unless the pleadings are properly amended to include it.

Appellant contends the court erred when it gave its instructions Nos. 10 and 11. He contends these instruc-

tions submitted the question of the conduct of those in charge of the canal on the theory that the jury could find they were acting in a sudden emergency, and if so, apply to their conduct the principles applicable in such situations. That is the import of these two instructions.

We said in Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766: "We have said many times that, where one is confronted suddenly with an emergency and is required to act quickly, he is not necessarily negligent if he pursues a course which mature reflection or deliberate judgment might prove to be wrong. All the law requires is that one conduct himself as an ordinary, careful and prudent person would have done under similar circumstances, and if he does that he is not held to be negligent, even though he committed an error of judgment. Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689."

The evidence shows that those in charge of the canal knew about 7 p. m. that it was getting dangerously full; that about 8 p. m. they knew the water was running over its south bank on the Pickering land; that they knew the volume of the water running over the bank was rapidly increasing; that they knew, or should have known, there was danger that the rapidly increasing volume of water would probably cause a break in the bank; and that sometime after 8 p. m. they knew the water had actually broken through the bank and that it was flowing out of the ditch through this break onto the adjoining tablelands. The damage to appellant's machinery, tools, and equipment occurred after 9:45 p. m. although it is not shown at exactly what time the water started flowing through the canyon.

"In order to justify a resort to the defense of sudden emergency * * * there must be an absence of opportunity for mature deliberation." Horton Motor Lines v. Currie, 92 F. 2d 164.

"An 'emergency' is a sudden or unexpected happening or occasion calling for immediate action. All the

authorities agree that the presence of danger must be imminent, leaving no time for deliberation." Horton Motor Lines v. Currie, *supra*.

"Emergency is commonly defined as: 'An unforseen combination of circumstances which calls for immediate action.' Webster's New International Dictionary, 2d ed., Unabridged." Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491.

"* * * the above rule cannot be successfully invoked by either party in a negligence case unless there is competent evidence to support a conclusion that a sudden emergency actually existed, * * *." Roby v. Auker, *supra*.

The evidence shows that those in charge of the canal had sufficient time to give thought to the danger to others that would arise if the canal on the Pickering land broke and which did arise when the break actually occurred. In this situation the sudden emergency doctrine had no application and it was error for the court to submit it. By doing so it had the effect of permitting the jury to relieve those in charge of the district from exercising ordinary care.

Appellant also contends the court erred when, over objection, it admitted evidence, both oral and documentary, of the extent and intensity of the rain, the extent and intensity of the flood resulting therefrom, and the extent of the resulting damage to the district's canal. This contention of appellant is based on the fact that his claim of negligence on the part of the district is based on its failure to warn him there was impending danger that the flood waters would break out of the canal on the Pickering land and of the fact that it had not done so when the break actually occurred, and not upon any claim of negligence on the part of the district in the construction or maintenance of its canal or upon the fact that it was not able to hold the flood water in its canal.

We think the jury, in considering the question of whether or not those in charge of the district were negli-

gent in failing to warn appellant, was entitled to a picture of the entire situation, including all the facts, circumstances, and conditions with which those in charge of the district were confronted. The evidence objected to was properly admissible for that purpose.

Appellant also contends the court erred by giving its instructions Nos. 4 and 14. This contention is likewise based on the fact that the rights here claimed by appellant are not based on any contention that the district was negligent in either the construction or maintenance of the canal nor on the fact that it was not able to hold the flood waters in its canal. In other words, appellant does not base his claim for damages on the fact that the district was not able to contain the water but upon the failure to warn him, under the circumstances here established, when it knew there was imminent danger of the flood waters breaking out of the canal and of the fact that it had done so when the break actually occurred.

By its instruction No. 4 the court advised the jury that the district had plead in its answer that the break in its canal, and any damage caused to appellant by the water flowing therefrom, resulted from a rain and flood condition which were unprecedented in character and an act of God. By its instruction No. 14 the court defined what constitutes an act of God and that no liability exists for damages resulting solely therefrom. The real effect of these two instructions was to submit the defense pleaded; that is, that if the damages resulted from an act of God then the district would not be liable therefor.

We have defined an act of God as follows: "An act of God is such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been reasonably anticipated or expected." Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N. W. 551.

We do not think, considering the basis on which the appellant seeks to recover, the fact that the storm was

of unprecedented proportions and concededly an act of God makes that fact available as a defense. Appellant does not contend that the district should have contained the water within its canal nor that he can recover because it was unable to do so. The basis on which he seeks to recover is that when the situation developed which threatened to and did cause a break in the district's canal on the Pickering land that then those in charge thereof had a duty to warn him. We find appellant's rights, under the factual situation here, to have been prejudiced by the giving of instructions Nos. 4 and 14.

In connection with instruction No. 14 appellant complains of the fact that the court used "approximately" when it should have used "proximately" and, also, in the last sentence thereof, of the use of "flood" where it should have used "break in its canal." These complaints are not without merit but since the cause must go back for retrial the same mistakes will undoubtedly not occur again.

The appellant also complains of the court's definition of proximate cause. The definition given by the court is as follows: "By the term 'proximate cause' is meant the primary or moving cause or fault where no other and independent cause disconnected therewith and self-operating, intervenes to produce the result."

Appellant's complaint is based on the contention that since the negligence complained of by him was the failure of the district to act that under no circumstances could this be considered by the jury as a moving cause. What appellant overlooks in this definition is that it not only refers to the primary or moving cause but also to the primary or moving fault. If those in charge of the canal failed to perform their duty, as is contended by appellant, then such was a fault on their part and covered by the definition given.

For the reasons herein stated we reverse the judgment of the trial court and remand the cause for retrial.

REVERSED AND REMANDED.