MARGARET COYLE, APPELLANT, v. JOHN STOPAK, APPELLEE.

86 N. W. 2d 758

Filed December 13, 1957. No. 34254.

*Wear, Boland & Mullin, McCormack & McCormack,* and *A. Lee Bloomingdale,* for appellant.

*Crawford, Garvey, Comstock & Nye* and *Gerald M. Vasak,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Douglas County. It involves a tort action wherein Margaret Coyle seeks to recover from John Stopak damages resulting from personal injuries she suffered in a truck-car accident which she claims was caused by the negligent conduct of Stopak in driving his truck. A jury returned a verdict for defendant and judgment was entered thereon. Her motion for new trial having been overruled, plaintiff perfected this appeal.

The accident, in which appellant was injured, happened about 6 p.m. on Tuesday, September 27, 1955, on a U. S. Highway bearing numbers 6, 30A, and 275, which we will herein refer to as the Dodge Road or highway, at a point about 4 miles west of Boys Town, Nebraska. It had its inception when appellee's truck, a 1951 GMC straight truck with stock rack, bumped into the rear of a 5-passenger Mercury coupé owned by Charles E. Coyle. At the time of the accident appellant was riding in the car as a guest of her husband.

The Coyles, Charles E. and appellant, are husband and wife. They are elderly people and were, at the time of the accident, respectively 77 and 78 years of age. They lived in a house which was one of the buildings on an 80-acre farm located north of Dodge Road, and adjacent thereto, at a point about 4 miles west of Boys Town. The buildings on this farm are located about 200 feet north of Dodge Road and a graveled lane leads from the house to the highway. As this lane leaves the gate, which is about 20 feet north

of the surfaced portion of the highway, it fans out in both directions. The Coyles, Mr. Coyle driving, were leaving their home to go to dinner at the Ten Mile Inn, which is to the east on Dodge Road.

Dodge Road is a four-lane surfaced highway 44 feet wide with two lanes for travel in each direction, each of which is 11 feet wide. On the south side of this paved surface, in the area immediately across from the Coyle driveway, the shoulder is amply wide for vehicles to enter upon if it becomes necessary for them to do so. At the time of the accident the weather was bright and clear, visibility good, and the surface of the highway clean and dry.

As Mr. Coyle drove down the lane and reached the north edge of the pavement of Dodge Road he stopped his car, which was then facing in a southeasterly direction, and looked both east and west along the highway. At the point where the Coyle lane or driveway enters onto the highway, which runs east and west, the highway is level. However, it rises both to the east and west thereof, reaching a crest to the east at a point somewhere between ¼ and ½ mile therefrom and to the west somewhere between ½ and ¾ mile therefrom. When Mr. Coyle looked to the east he saw a vehicle approaching from that direction but at a distance which he considered sufficient to permit him to cross the highway ahead of it in order to drive towards the east. Mr. Coyle then looked to the west. He admitted he could see to where the highway crested. He testified he saw no vehicles coming from that direction, so started to drive his car onto the paving, proceeding in a southeasterly direction at from 10 to 15 miles an hour as he did so.

Appellee, who was 58 years of age at the time of trial, is a farmer, feeder, and commercial trucker. He lives about 5 miles southeast of Fullerton, Nebraska. On the day of the accident he was hauling a load of cattle to

the South Omaha market for Mike Uzendoski, a feeder living near Fullerton.

Appellee was driving his truck east on Dodge Road in the south lane for eastbound traffic. He testified he saw the Coyle car entering onto the surfaced portion of the highway when his truck was some 50 to 60 feet west of the center of the Coyle lane, if extended across the highway; that the car proceeded onto the surfaced portion of the highway and traveled in a southeasterly direction at from 15 to 20 miles per hour; that as it continued to travel in a southeasterly direction the car entered the south lane for eastbound traffic; and that as it did so the left front of his truck came in contact with and bumped the right rear of the car, causing some damage to both vehicles. What happened after this occurred, a more detailed discussion of the facts relating to this incident, and what happened thereafter will be more fully set out in connection with our discussion of the various assignments of error.

Appellant alleged in her petition that appellee operated his truck at a greater rate of speed than was reasonable and proper, having regard for the condition of the highway, and the traffic thereon. She now contends the trial court prejudicially erred in failing to submit this issue to the jury in view of the evidence adduced.

In this regard, "It is the duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings and supported by evidence. A litigant is entitled to have the jury instructed as to his theory of the case as shown by pleadings and evidence, and a failure to do so is prejudicial." Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571.

"In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for

the party producing it, upon whom the burden of proof is imposed." Krichau v. Chicago, B. & Q. R. R. Co., 150 Neb. 498, 34 N. W. 2d 899.

"A party to an action is entitled to have the jury instructed with reference to his theory of the case, when the pleadings present the theory as an issue and it is supported by competent evidence, whether requested to do so or not." Southwell v. DeBoer, 163 Neb. 646, 80 N. W. 2d 877. See, also, Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

"In order to require that an instruction be given, the theory must be supported by competent evidence. In the absence of competent evidence instruction upon it is not required nor proper." Southwell v. DeBoer, *supra.*

"The burden of proving a cause of action is not sustained by evidence from which negligence can only be surmised or conjectured." Bowers v. Kugler, 140 Neb. 684, 1 N. W. 2d 299. See, also, Bowerman v. Greenberg, 142 Neb. 721, 7 N. W. 2d 711; Shields v. County of Buffalo, *supra.*

The only direct evidence as to the speed at which appellee was driving his truck is that of appellee himself for Mr. Coyle testified he never saw appellee's truck. Appellee testified that when he first saw the Coyle car as it was entering onto the surfaced portion of the highway he was about 50 to 60 feet west of the center of the Coyle lane and going between 35 and 40 miles an hour. This was fully within the maximum then provided by law. See § 39-7,108, R. R. S. 1943.

However, section 39-723, R. R. S. 1943, provides, insofar as here material, that: "No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, * * *." See, also, subsections (1), (3), and (4) of § 39-7,108, R. R. S. 1943. And as stated in subsection (4): "* * * speed shall be de-

creased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care; * * *."

We said in Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112: "The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing."

"Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. All that the law requires is that the facts and circumstances proved, together with the inferences that may be properly drawn therefrom, shall indicate with reasonable certainty the negligent act charged." Shields v. County of Buffalo, *supra*.

The foregoing would be true as to the specification of speed as well as to any other specification of negligence claimed. See, Andersen v. Omaha & C. B. St. Ry. Co., 116 Neb. 487, 218 N. W. 135; Shields v. County of Buffalo, *supra;* Davidson v. Vast, 233 Iowa 534, 10 N. W. 2d 12; Haase v. Employers Mut. Liability Ins. Co., 250 Wis. 422, 27 N. W. 2d 468; Shockey v. Baker, 212 Ga. 106, 90 S. E. 2d 654. We think the rule stated in 10 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 6560, p. 596, is applicable here. It is as follows: "Although the evidence may be entirely circumstantial as to the rate of speed at which an automobile was operated, it may be sufficient to support a reasonable conclusion reached by the jury on the issue of negligence. Circumstances connected with an accident may be sufficient to overcome direct evidence as to the speed of a motor vehicle."

Section 39-752, R. R. S. 1943, provides in part as follows: "The driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on such public high-

way." However, we are not, in discussing this question, concerned with the negligence, if any, of Mr. Coyle for even if it existed it would not be imputable to appellant, a guest passenger in his car. See Bartek v. Glasers Provisions Co., 160 Neb. 794, 71 N. W. 2d 466. As therein held: "The negligence of a husband while driving an automobile with his wife as a guest may not be imputable to her * * *."

As stated in Kohrt v. Hammond, 160 Neb. 347, 70 N. W. 2d 102: "A vehicle traveling on a highway at a reasonable and lawful rate of speed is not required to slow down or stop upon the appearance of a vehicle about to enter the highway from a private road until it reasonably appears that its driver is not going to yield the right-of-way."

And in Paddack v. Patrick, 163 Neb. 355, 79 N. W. 2d 701, we held: "A user of the highways may assume, unless and until he has warning, notice, or knowledge to the contrary, that other users of the highways will use them in a lawful manner, and until he has such warning, notice, or knowledge, he is entitled to govern his actions in accordance with such assumption."

Bearing in mind these principles we turn to the evidence in the record relating thereto.

Appellee's truck was 28 feet in length with an axle load capacity of 18,000 pounds. Empty it weighed about 8,500 pounds. On the day involved it was carrying a load of about 11,000 pounds consisting of 11 head of cattle weighing about 1,000 pounds each. It had brakes on all four wheels, the back wheels carrying dual tires. These brakes were all in good condition and consisted of regular, emergency, and vacuum. If fully applied these vacuum brakes would cause all four wheels to slide and the tires thereon to skid.

Appellee testified that he first observed the Coyle car as it was leaving the lane and entering upon the surfaced part of the highway; that his truck was then some 50 to 60 feet west of the center of the lane if extended

across the highway; that he immediately applied his regular and vacuum brakes, causing the cattle in his truck to pile forward in the rack and push it forward against the cab, mashing it, and breaking the window therein; that he continued to observe the car as it traveled southeasterly across the paved surface at from 15 to 20 miles an hour; that when the car entered the south lane for eastbound traffic, in which he was driving, the left front of his truck came in contact with the right rear of the car; that his truck was then traveling at from 28 to 30 miles per hour; and that he stopped his truck in the south lane for eastbound traffic in a distance of about 28 to 30 feet from the point of impact, although there is evidence from which it could be found it traveled 78 feet before being stopped.

There are other important facts to be considered in connection with the foregoing. The point of impact was 90 feet east of the center of the Coyle lane, if extended across the highway, thus making the distance between where appellee first saw the Coyle car, and applied his brakes, and the point of impact between 140 and 150 feet. In this area there were no skid marks, thus indicating appellee did not apply his vacuum brakes at full strength at any time as he watched the Coyle car come across the highway up to the time his truck bumped into it. Appellee's testimony is to the effect that in this distance of 140 to 150 feet the speed of his truck was only reduced about 7 to 10 miles an hour, although he admits that traveling at from 35 to 40 miles an hour he could have stopped it within 50 to 60 feet if he had applied his brakes full strength. We think, from this evidence, the jury could properly have found that appellee was driving and continued to drive his truck much faster than 35 to 40 miles an hour, as he testified he was doing when he first observed the Coyle car, and faster than was reasonable and proper under the circumstances considering the traffic he observed.

This is further evidenced by the fact that the cattle

piled forward in the rack and caused it to move forward against the cab when appellee applied the brakes. Appellee testified that would be likely to happen only in case of an application of the brakes for a quick or an emergency stop. Certainly a jury could find that if he was only driving from 35 to 40 miles an hour when he first saw the Coyle car coming onto the highway that no quick or emergency stop was necessary.

We could discuss this matter further but that would serve no purpose. We think the evidence adduced was clearly sufficient to require this issue to be submitted and the trial court's failure to do so resulted in prejudicial error. It was not necessary for the jury to accept appellee's testimony as to his speed in view of all the circumstances disclosed by the evidence.

Appellant also contends the trial court prejudicially erred by submitting to the jury the question of whether or not appellee was confronted by a sudden emergency. By its instruction No. 13 the trial court advised the jury as follows: "You are instructed that in the event you find that defendant was confronted by a sudden emergency, not caused by him, which placed himself or the plaintiff in a position of peril, without sufficient time in which to determine with certainty the best course to pursue, defendant would not be held to the same coolness, accuracy of judgment or degree of care as is required of him under ordinary circumstances, or of one having ample opportunity for the full exercise of judgment, and would not be liable for injuries caused by his vehicle, provided he exercised ordinary or reasonable care or prudence, considering the stress of the circumstances, to avoid an accident."

"An 'emergency' is a sudden or unexpected happening or occasion calling for immediate action." Horton Motor Lines v. Currie, 92 F. 2d 164. See, also, Hilzer v. Farmers Irr. Dist., 156 Neb. 398, 56 N. W. 2d 457.

"In order to justify a resort to the defense of sudden emergency * * * there must be an absence of opportunity

for mature deliberation." Horton Motor Lines v. Currie, *supra*. See, also, Hilzer v. Farmers Irr. Dist., *supra*.

"The emergency rule cannot be successfully invoked by either party in a negligence case unless there is competent evidence to support a conclusion that a sudden emergency actually existed, and then it cannot be successfully invoked by one who has brought that emergency upon himself by his own acts or who has not used due care to avoid it." Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491. See, also, Davis v. Dennert, *supra*.

Appellee observed the Coyle car entering upon the surfaced part of the highway and proceeding in a southeasterly direction at from 15 to 20 miles an hour. He had the opportunity to and did observe it at all times after he first saw it coming onto the highway. But appellee says he could not be sure that the Coyle car was going to enter the outer or driving lane in which he was traveling until the very last moment. Appellee had a right to assume, until he actually observed otherwise, that Coyle would first take the inner or passing lane for eastbound traffic and then look to see if any traffic from the west prevented his entering onto the driving lane before doing so. Consequently a jury could properly find that when Coyle failed to do so and proceeded directly onto the outer or driving lane in which appellee was driving that appellee was confronted with a sudden emergency. This would be a situation comparable to where a driver of a car suddenly enters onto a public highway from a private road or lane in front of a vehicle traveling thereon and fails to yield to it the right-of-way which the driver of the vehicle traveling on the public highway has the right to assume he would. We think the evidence adduced justified the submission of this issue.

Appellant contends the trial court also prejudicially erred by giving instruction No. 8 submitting the question of intervening cause because, as she claims, the evidence adduced did not justify the submission thereof.

But even assuming that the question should have been submitted, it is appellant's contention that the trial court, as a whole, failed to correctly or adequately inform the jury as to the law concerning intervening cause as it applies to the facts of this cause.

We said in Welstead v. Ryan Construction Co., 160 Neb. 87, 69 N. W. 2d 308, that: "It is error to submit issues upon which there is no evidence to sustain an affirmative finding." See, also, Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854.

"In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643.

"Actionable negligence exists when the injury or the loss is the proximate result thereof. The proximate result must be the natural and probable consequence which ought to have been foreseen or reasonably anticipated in the light of the attendant circumstances. An injury is not actionable if it would not have resulted from the alleged negligence but for the interposition of a new and independent cause. Proximate cause, as used in the law of negligence, is that cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred. An efficient, intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury. The cause of an injury is that which actually produces it while the occasion is that which provides an opportunity for the causal agency to act." Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683. See, also, Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831.

"The causal connection is broken if between the defendant's negligent act and the plaintiff's injury 'there

has intervened the negligence of a third person who had full control of the situation and whose negilgence was such as the defendant was not bound to anticipate and could not be said to have contemplated, which later negligence resulted directly in the injury to the plaintiff.' Ladd v. New York, New Haven & Hartford Railroad, 193 Mass. 359, 363." Gordon v. Bedard, 265 Mass. 408, 164 N. E. 374. See, also, Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710.

"A tortfeasor is answerable for all the consequences that in the natural course of events flow from his unlawful acts, although those results are brought about by the intervening agency of others, provided the intervening agents were set in motion by the primary wrongdoer, or were the natural consequences of his original act." Hilligas v. Kuns, 86 Neb. 68, 124 N. W. 925, 26 L. R. A. N. S. 284. See, also, Paup v. American Telephone & Telegraph Co., 124 Neb. 550, 247 N. W. 411; 1 Cooley, Torts (4th ed.), § 50, p. 114.

In Kroeger v. Safranek, *supra,* we said: "A cause of an injury may be the proximate cause notwithstanding it acted through successive instruments or a series of events, if the instruments or events were combined in one continuous chain or train through which the force of the cause operated to produce the disaster."

"An act done by another in normal response to fear or emotional disturbance to which the actor's negligent conduct is a substantial factor in subjecting the other is not a superseding cause of harm done by the other's act to himself or a third person." Restatement, Torts, § 444, p. 1191.

The evidence shows that after the Coyle car was hit it remained upright and continued east in the south lane for eastbound travel for a distance of some 100 to 150 feet when it left the highway by going over the shoulder to the south thereof; that about 275 feet further to the east it again came onto the highway and proceeded to cross it toward the north; and that as it did so it ran

head-on into the left side of a truck traveling thereon from the east to west. As a result of the second impact the truck that was hit ended up on its top some 400 to 500 feet east of the Coyle lane while the Coyle car remained upright. The car stopped on the north half of the surfaced part of the highway, facing mostly west but some north. It was between 30 and 45 feet east of the truck which was also on the surfaced portion of the highway facing south. Both Mr. Coyle and appellant were in the front seat of the car, appellant having been seriously injured.

From the evidence adduced we think a jury could find that the shock of the first impact caused Mr. Coyle to become semi-conscious and resulted in his losing control of himself; that because thereof he was neither able to shut off the motor nor touch the steering wheel to control the car but, if he did the latter, he was not able to exercise any judgment while doing so; and that the impact, which had sent the Coyle car out of control, was the proximate cause of its running into the side of the westbound truck. If the jury found such to be the facts then, of course, appellee would be liable for any injuries resulting to appellant therefrom if, in the first instance, the impact or accident was caused by any negligence on his part. There is, however, evidence from which a jury could find that Mr. Coyle remained conscious at all times, even up to and after the second impact; that he was able to get hold of the steering wheel of his car after it went out of control as a result of the first impact and control it; and that after he did so he drove it onto the highway. If the latter is found to be the situation and Mr. Coyle regained control of his car and drove it back onto the highway, then we think what happened after that was not a proximate result or consequence of the first impact but due entirely to Mr. Coyle's subsequent conduct. In view thereof we think the facts present a jury question on this issue.

As to the second part of this contention it is, of course,

true that: "The purpose of an instruction is to furnish guidance to the jury in its deliberations, and to aid it in arriving at a proper verdict; and, with this end in view, it should state clearly and concisely the issues of fact and the principles of law which are necessary to enable it to accomplish the purpose desired." Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200. However, as stated in Buhrman v. Smollen, 164 Neb. 655, 83 N. W. 2d 386: "Instructions to a jury must be considered together, so that they may be properly understood, and, if as a whole they fairly state the law applicable to the evidence when so construed, error cannot be predicated on the giving thereof."

"Instructions must be considered and construed together, and if they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission, and, unless this is done, the judgment will not ordinarily be reversed for such defects." Johnson v. Nathan, 161 Neb. 399, 73 N. W. 2d 398.

We think these principles have application here. If appellant desired more detailed and specific instructions as to when an intervening cause is sufficient to breach the causal connection between the original negligence, if any, and the injury or when an intervening cause becomes a new and independent cause within the meaning of the instructions given, she should have requested same to be given. In the absence of such request we think the instructions given adequately and sufficiently state the principles here applicable on this issue.

Appellant also contends the trial judge prejudicially erred by interrogating appellee and by making comments relating thereto which had the effect of implying that the answers elicited by his questions were the truth. In view of our holding that a new trial is necessary we make no comment on what the trial court did since it will probably not happen on a retrial. However,

we think it would be well to state the principles applicable:

"We see no impropriety in a trial court interrogating witnesses regarding a fact under investigation, when the tendency is only to develop the truth, and is calculated in nowise to influence the jury, save as the testimony will assist them to arrive at a correct conclusion on the questions of facts in issue." Leo v. State, 63 Neb. 723, 89 N. W. 303. See, also, Buhrman v. Smollen, *supra*.

However this right "* * * should be very sparingly exercised, and generally counsel for the parties should be relied on and allowed to manage and bring out their own case. The actions of the judge in this respect should never be such as to warrant any assertion that they were with a view to assistance of the one or the other party to the cause." Bartley v. State, 55 Neb. 294, 75 N. W. 832. See, also, Omaha Brewing Assn. v. Bullnheimer, 58 Neb. 387, 78 N. W. 728.

However, "* * * the judge presiding at a trial must conduct it in a fair and impartial manner, he should refrain from making any unnecessary comments or remarks during the course of a trial which may tend to a result prejudicial to a litigant or are calculated to influence the minds of the jury. A remark or comment which is shown to be prejudicial to the rights of the party complaining, or which is such that it may be assumed prejudice will result therefrom, is fatal to the validity of the trial; * * *." 64 C. J., Trial, § 91, p. 90, and cited with approval in Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168, and Styskal v. Brickey, *supra*. See, also, 88 C J. S., § 49, p. 124.

Appellant's further contention that the verdict is clearly wrong because it is not supported by sufficient evidence is without merit for certainly the record does not disclose a factual situation which entitles appellant to a judgment against appellee as a matter of law. There

is ample evidence, if the cause had been properly submitted, to sustain a finding by a jury that appellee was not negligent in the first instance and, if he was, that he had been relieved thereof by an intervening cause superseding such negligence. In either case a verdict for appellee would be proper and sustainable.

We have come to the conclusion that appellant is entitled to a new trial and that the judgment of the trial court overruling her motion therefor was in error. We therefore reverse the judgment of the trial court denying appellant a new trial and remand the cause to it with directions that appellant's motion for a new trial be sustained and that she be granted a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.