JOSEPH S. BARTLEY V. STATE OF NEBRASKA.

FILED JUNE 9, 1898. No. 9347.

1. Indictment and Information: DESCRIPTION OF MONEY: EVIDENCE. The provisions of section 420 of the Criminal Code, to the extent they relate to matter of proof, *held* not governable of the question of proof in this case.

2. Embezzlement of Public Moneys. The conclusions announced in the former opinion (*Bartley v. State*, 53 Neb. 310) approved and adopted, and, having been then and therein fully stated, are referred to and need not be restated here.

3. ———: CONVICTION: ARGUMENTS. The judgment and sentence reaffirmed.

REHEARING of case reported in 53 Neb. 310. *Former decision sustained.*

*Charles O. Whedon* and *T. J. Mahoney*, for plaintiff in error.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

HARRISON, C. J.

Proceedings in error were brought to this court on behalf of Joseph S. Bartley from the judgment and sentence of the district court of Douglas county in an action in which he was charged and, on trial, convicted of the embezzlement of a sum of money, the property of the state. A hearing in this court resulted in an affirmance of the judgment and sentence. The opinion in which were embodied the arguments and conclusions on the different subjects of the litigation as then presented was filed January 3 of the current year, and reported in 53 Neb. 310-364. Subsequently a motion for a rehearing was filed and granted, and the cause has been again argued and submitted for decision.

We will not make any further statement of the case, or the facts and circumstances thereof, but refer the reader to the former opinion for such statement. It was a subject of complaint in the brief filed on rehearing that sufficient time had not been devoted to the examination of the record and the preparation of an opinion. It is true, as stated in the brief, that the record is quite large —contains 1,200 pages—and that extended and elaborate briefs were filed; but it must here be borne in mind that the argument in such briefs and orally—considerable more than the usual time was allowed for the latter —were of great and material assistance in the consideration and decision of the points of complaint which were discussed. Moreover, and finally, it is not a question of the number of hours, days, or weeks consumed or to be taken in the examination and adjudication of a cause, but of such a due consideration of the litigated matters, without reference to the time employed, as will result in a proper and just disposition of them and render true right to the litigants.

It is stated in the brief: "Expressions are used in the

opinion, perhaps inadvertently, which find no support in the record, and to which the assent of silence ought not to be accorded. It is said, in the opinion, that there is no controversy as to the facts; that the defendant on the 10th day of April, 1895, made out in his own name, and presented to the auditor of public accounts, a voucher for the sum appropriated to replenish the state sinking fund, and caused the auditor to issue on that date a warrant, which was delivered to defendant on the day it bears date, and he at once registered it in the proper book in his office, but omitted to enter upon the book in the proper column the name of the person presenting the warrant for payment; that almost immediately thereafter defendant indorsed his name upon the back of the warrant and placed the same in the hands of the Omaha National Bank, or its president, for negotiation, and the latter, as agent for the defendant, sold the warrant to the Chemical National Bank for the face value." It is asserted in this connection that, of many of these acts and things, while it appeared from the evidence that they were done or existed as facts, it was not shown that they were personal acts of the plaintiff in error or made under or by his personal supervision or direction; or of some, of which the time might incidentally or directly be of the controversies, that it was not of the testimony that they occurred of times assumed in the statement in the opinion to which the brief referred. In regard to the matters done in the state treasurer's office, it may be said that some were by deputies or clerks in the performance of their duties in the business of the office and sanctioned by the treasurer, some by his signature, and some of which there were such attendant facts and circumstances as to raise a presumption of the treasurer's knowledge. It may be truthfully observed of the several matters that the evidence of them was of a nature to warrant the broad and comprehensive assertion relative to them employed in the opinion.

It is again urged with much strength and force of argument that there was no evidence to warrant or uphold the verdict of conviction, particularly in that it was not shown that any money, in the strict sense of the term, or cash—actual dollars and cents in specie—was tangibly employed or involved in the transaction which it was and is charged constituted the crime—the embezzlement of the funds of the state. That ninety per cent of the business affairs of the country which involve the payment or transfers of money are conducted successfully and satisfactorily without the exchange of dollars and cents in specie, and yet every one concerned receives and employs his money, is asserted in articles on financial questions and heard in discussions and conversations of business men, and it is no doubt approximately true. The law, conservative as it is, and rightly so, still must and does, where and when administered or interpreted and applied in the true spirit, and there is no direct statutory provision which must be legislated from its position as an obstruction, keeps, it is true, a somewhat tardy pace with the progress in business or other matters, and meets and becomes accordant, or adapts itself in its rules and doctrines to the multifarious changes and conditions which are evolved from the affairs of men. This it does, and yet is stable, settled, firm, and certain. That all men in the ordinary business transactions of life might, may, and do, through the usual media and channels, transfer money, have it, use it, and enjoy it (which cannot be gainsaid), and that a treasurer, when he makes use of the same means, did not receive the money, that it was not transferred, when, at the same time, it appears, without controversy, that his purposes were served, that he had the money and used it to as full an extent as if he had passed it in kind through his fingers, is an anomalous position and one not within good reason and modern usages, conditions, or beliefs. The several acts and matters elemental, directly or indirectly, of the purposed conversion of the state's money were but means

to the end, and had reached their final accomplishment when, pursuant to the order of the check, the moneys of the state were paid out or transferred, not for its use or uses, but to perfect, to close and render entirely effectual the misappropriation of the money to the use or uses of the plaintiff in error. We are entirely satisfied with the arguments and conclusions on this subject expressed in the former opinion, and that the reasons given, and the citations therein, support the conclusions announced. It is true that there was no physical transfer of cash—money in specie—but the mental processes were all fully existent and active, and were, through regular recognized methods of business procedure, carried out, and the money taken for the individual benefit, and not for the state.

It may be said here that aside from, and additional to, what has been formerly said on the point of the payment of the money drawn by the check, it has been further advanced in the brief for the state, and was of matters discussed in consultation, that the warrant in question bore the indorsement of the plaintiff in error, by which he became liable, and the money was applied to, and effected the extinguishment of, this, as it may be styled, contingent liability.

It is further urged in this connection that we ignored in the former opinion the provisions of section 420 of the Criminal Code in which it is stated: "In every indictment in which it shall be necessary to make any averment as to any money, or bank bill, or notes, United States treasury notes, postal and fractional currency, or other bills, bonds, or notes, issued by lawful authority and intended to pass and circulate as money, it shall be sufficient to describe such money or bills, notes, currency, or bonds simply as money, without specifying any particular coin, note, bill, or bond; and such allegation shall be sustained by proof of any amount of coin or of any such note, bill, currency, or bond, although the particular species of coin of which such amount was composed, or the particular

nature of such note, bill, currency, or bond shall not be proved." This section but excuses in the indictment to which it refers the particularity in pleading as to description, and correspondingly relieves from specific proof in the same respect, and cannot, with a fair construction or application, be said to require that in an embezzlement, such as was charged in the present case, there must of necessity be proof that a coin or coins—the pieces of money—were physically handled and passed or carried around. The section is clearly not of the force asserted for it in the argument for plaintiff in error in the present action.

In the matter of the complaint that the judge of the district court who presided during the trial of this case took too active a part therein, in that he interrogated the witnesses, etc., we have carefully examined this matter again and discover that in a number of instances he asked questions for what plainly appears to have been the purpose of a more clear understanding of the admissibility or non-admissibility of testimony to which an objection had been interposed, that the ruling on the objection might be correct. Such actions were entirely proper. In a number of other instances the trial judge questioned witnesses and elicited testimony which bore more or less directly on the main issues. It is undoubtedly necessary that the judge who presides should acquire as full knowledge of the facts and circumstances of the case on trial as possible, in order that he may instruct the jury, and correctly, to the extent his duty demands, shape the determination of the litigated matters, that justice may not miscarry, but may prevail; and doubtless it is allowable at times, and under some circumstances, for the presiding judge to interrogate a witness. The exact extent or when the exigencies may warrant an exercise of this right are matters which are not capable of very precise statement, but it may be said that the right here in question is one which should be very sparingly exercised, and generally counsel for the parties should be

relied on and allowed to manage and bring out their own case. The actions of the judge in this respect should never be such as to warrant any assertion that they were with a view to assistance of the one or the other party to the cause. We do not discover in the present case any undue or prejudicial actions or remarks of the judge who presided.

Under the proposition that the district court of Douglas county had no jurisdiction of the action, the constitutionality of the "Depository Law" is argued at this presentation of the case, and it is in this connection also urged that the court will not apply the doctrine of estoppel in a criminal case to any portion of the issues. We must again, for the reasons stated in the former opinion, and which we deem entirely sufficient, decline to enter upon a discussion of this point.

It was of the complaints strenuously urged in argument that the trial judge made in his charge, on the subject of reasonable doubt, the following statement: "You are not at liberty to disbelieve as jurors, if from all the evidence you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered." It was and is insisted that this was vicious, for that its effect was to remove from the jurors the obligation of the oath which they had taken or that it freed them from such obligation. We will say here that in the charge in this case in one or two of the paragraphs the attention of the jurors was specifically challenged to the oath, its solemnity and its application to their acts and duties during the course of the trial, and their deliberations; but to return to the terms employed in the charge which we have quoted, a fair construction does not give them the import and significance which is imputed to them by counsel in the brief. They do not tell jurors to disregard the oath, but interpreted fairly and reasonably they do say that the parties to whom they were addressed shall act in all things, during their performance of their duties as jurors, as true

men; not to sink or lose, respectively, individuality, personality, identity, but, under and in view of the oath, to at all times and in all things act, consider, and determine as sensible, reasoning beings, bringing to bear their powers, abilities, and faculties as men; and surely that they should so do is not foreign to the purpose for which they were impaneled, but directly in consonance with it. We are not to consider whether the terms employed were necessary or added very much to the charge, but we are to determine whether they were, as it is asserted, vicious, and we conclude that they were not. The expression quoted has been approved by this court in several cases. (See citations in former opinion; also *Barney v. State*, 49 Neb. 515; *Carrall v. State*, 53 Neb. 431; *Fanton v. State*, 50 Neb. 351.)

There was at the trial an instruction requested for plaintiff in error, and refused, in which was embodied the statement of the presumption of innocence of the accused, which is always present, and must have place in every trial of a criminal action, coupled with the further announcement that the presumption was a matter of evidence in favor of defendant and to be so considered by the jurors. In the former opinion it was stated of the error which it was argued had occurred in this particular that the principle embraced in the request had been embodied and given in the sixth paragraph of the charge on the court's own motion; also that the twenty-first paragraph of the charge, the one relative to a reasonable doubt, in its substance, as given, was sufficient to warrant the court in the refusal to read the request. It was at the second hearing in this court argued that the court was wrong in the position taken in the former opinion, and in this connection there was quoted in the brief a considerable portion of an opinion of the supreme court of the United States in the case of *Coffin v. United States*, 156 U. S. 432, 15 Sup. Ct. Rep. 394, in which there appears an exhaustive and able discussion on the subject of the presumption of innocence of a defendant in a criminal

action, its weight, and that it be considered as evidence, and in which the main question determined was whether an instruction on reasonable doubt filled the place of an instruction that the presumption of innocence was a matter of evidence in favor of an accused person. The conclusion reached was announced as follows: "In a criminal case it is error to refuse to charge as to the presumption of innocence, though the court fully and accurately charges as to the doctrine of reasonable doubt." This may be the true doctrine; we need not and do not now decide, but be it as it may, if we leave the twenty-first instruction—the one on reasonable doubt in this case—entirely out of the consideration, except to the extent it must be read and construed with and of the charge as a whole, the sixth instruction given, although it did not employ the same phraseology as the request—and it possibly might have been better had it done so, particularly in the use of the word "evidence" and its application to the presumption as favorable to the defendant—did embody a statement in effect of the principle, and was sufficient; for, with the presumption of force, as it was stated it must be, as a bar to any conviction until guilt was established beyond any reasonable doubt, the same idea was elemental and prevalent in the deliberations of the jurors as would have been had the request been given. It follows that we must again overrule this branch of the argument.

There were many other questions raised and urged in argument, and we have again carefully examined and considered all, inclusive of such as referred to alleged errors in the admission and exclusion of matters of evidence, and, after full investigation and consideration of each and all, must reach the conclusion before announced, that the record discloses no errors which call for a reversal of the judgment; hence the judgment and sentence must be

REAFFIRMED.