OMAHA BREWING ASSOCIATION v. CHRISTIAN BULLN-
HEIMER.

FILED APRIL 6, 1899.    NO. 8824.

1. **Master and Servant: ACTION FOR PERSONAL INJURIES: MISTREAT-
MENT OF SERVANT: OPINION OF THIRD PERSON: COURT'S EXAMINA-
TION OF WITNESSES.** Assignment of error of the admission of cer-
tain testimony examined, and *held* well taken.

2. **Instructions: EXCEPTIONS: REVIEW.** There must be an exception
to an instruction when given, to obtain a review of the alleged
error of such action.

ERROR from the district court of Douglas county.
Tried below before SCOTT, J.   *Reversed.*

*Hamilton & Maxwell, W. W. Morsman,* and *George B.
Lake,* for plaintiff in error.

*Edward W. Simeral* and *Weaver & Giller, contra.*

HARRISON, C. J.

In an error proceeding to this court the brewing asso-
ciation seeks a reversal of a judgment of the district court
of Douglas county in favor of the defendant in error in
an action wherein he recovered a sum as the damages for
personal injuries alleged to have been suffered by him by
reason of the negligence of the association.   In the peti-
tion there was pleaded the corporate capacity and exist-
ence of the association, also that defendant in error was,
and had been prior to March 12, 1894, "an engineer by
trade," and as such employed by the association.   For
further statements we now quote from the petition:

"Plaintiff further says that on the 12th day of March,
1894, while employed by said defendant as aforesaid, that
Gottlieb Storz, the president of said defendant corpora-
tion, ordered this plaintiff to go into the third cellar of
said defendant's building for the purpose of doing some
work upon the brine pipes in said cellar.

"4. That prior to said 12th day of March, 1894, by orders of said defendant, there had been a hole cut through the floor of said third cellar about eight feet square, which said hole opened into the second cellar about eighteen feet below that of the third cellar, and that through negligence and carelessness of the said defendant, its agents, servants, and employés said opening was left wholly and entirely without protection and unguarded and uncovered by railing of any kind or description.

"5. The plaintiff further states that said third cellar is at all times dark and unprovided with light, and plaintiff was compelled to carry a lighted candle, and that. while examining the brine pipes which are attached to the sides and ceiling of the third cellar wall, and through no carelessness or negligence on his part, and not knowing of the existence of the hole in the floor of said cellar, as aforesaid, and while walking along the floor of said cellar, this plaintiff ' stepped into said hole and fell through the same, a distance of about eighteen feet, into the cellar below."

There were further allegations relative to the injuries received by the defendant in error, their character, etc., and the suffering endured by him. Issues were joined, and a trial thereof resulted, as we have hereinbefore indicated, in a judgment against the association.

One question raised and argued for the plaintiff in error is of the admissibility of a portion of the testimony of the defendant in error, who, in answer to an interrogatory in regard to what had been stated to him by Mr. Haubens, who, it was testified by defendant in error, was one of the corporation, assisted in the transaction of its business, was an officer of the association, stated that in a conversation between them as to what had caused Bullnheimer to quit the service of the association "I said to Mr. Haubens the way I get treated from Mr. Storz I can hardly stand it any longer. I stood it so long. I done my best, all I could, all I could do for him, and then Mr. Haubens said, 'It is a shame you get treated that way;

you been working so long for the company and always give satisfaction;' and he says, 'So far as,' he says, 'I should be paid if I should work or not.' I could earn my money if I only was around." This testimony was in relation to a business matter or transaction between the defendant in error and the association which transpired subsequent to the alleged injuries, and the witness testified of the stated opinion of another party relative to the shameful treatment by the association of the defendant in error in such after affair. The opinion of the conduct of the association or its officer or officers, as stated to have been expressed by Mr. Haubens, whether so voiced by him or any other person, and while an officer or agent of the association or wholly unconnected with it, was wholly incompetent and immaterial to the issues then on trial and was well calculated to prejudice the rights of plaintiff in error; hence the admission of the testimony was erroneous.

It developed in the testimony that prior to the time the hole in the floor through which the defendant in error fell was made some person had marked on the floor, with chalk, lines which were to be followed in sawing and taking out so much of the flooring as was necessary, and there had been an attempt during the course of the trial to show that the defendant in error had given directions for the chalk-marks and for making the hole in the floor. Immediately following an interrogation to defendant in error by his counsel in relation to the chalk-marks on the floor and the former's probable knowledge of them or conversation about them with the carpenter who was to observe them in the removal of the portion of the floor outlined by them, which question was objected to by counsel for the association, the presiding judge, after overruling the objection, interrogated the witness, and connectedly there were other occurrences, of all of which the following is the record:

I never made a chalk-mark and never was asked to make one.

The Court: Did you know where the chalk-marks were?

Objection by the defendant to the question propounded, as there is no evidence here tending to show that he knew anything about chalk-marks on the floor where this hole was cut.

The Court: You may state to the jury what the fact is in regard to that, whether you knew anything about it or not.

Objection by the defendant, as it is not competent for the court to examine a witness in the case.

The Court: It is competent for the court to see that justice is done. I don't propose to sit here like a Stoughton bottle and leave things untouched. If a point is overlooked, I propose to call it out.

Defendant excepts.

A. There wasn't any such thing.

\*    \*    \*    \*    \*    \*    \*

The Court: Gentlemen of the jury, when on yesterday the plaintiff was upon the witness-stand and a question was put to the witness by the court as to the chalk-marks testified to, the question was objected to by the defendant's counsel; thereupon was a colloquy between the court and counsel in regard to the matter, and I wish to say to you that whatever was said by the court was not for you, or to you, but for counsel and to counsel. It was not intended to, nor will you allow it in any manner to, influence you or prejudice you for or against either party to the suit. It was intended solely and alone for counsel, as it was a question of the legal right of the court at any time to ask a proper question of a party or a witness upon the stand respecting any point or points involved in the case without first asking permission of counsel to do so.

It is argued that the court erred in questioning the witness and in its statements to the jury in answer to the objection which was interposed to its interrogatory. We have stated our views in regard to action of a presiding judge questioning witnesses as follows: "In the matter of the complaint that the judge of the district court who

presided during the trial of this case took too active a
part therein, in that he interrogated the witnesses, etc.,
we have carefully examined this matter again, and dis-
covered that in a number of instances he asked questions
for what plainly appears to have been the purpose of a
more clear understanding of the admissibility or non-
admissibility of testimony to which an objection had been
interposed, that the ruling on the objection might be cor-
rect. Such actions were entirely proper. In a number
of other instances the trial judge questioned witnesses
and elicited testimony which bore more or less directly
on the main issues. It is undoubtedly necessary that the
judge who presides should acquire as full knowledge of
the facts and circumstances of the case on trial as pos-
sible, in order that he may instruct the jury, and cor-
rectly, to the extent his duty demands, shape the deter-
mination of the litigated matters, that justice may not
miscarry, but may prevail; and doubtless it is allowable
at times, and under some circumstances, for the presiding
judge to interrogate a witness. The exact extent or when
the exigencies may warrant an exercise of this right are
matters which are not capable of very precise statement;
but it may be said that the right here in question is one
which should be very sparingly exercised, and, generally,
counsel for the parties should be relied on and allowed
to manage and bring out their own case. The actions
of the judge in this respect should never be such as to
warrant any assertion that they were with a view to as-
sistance of the one or the other party to the cause."
(*Bartley v. State*, 55 Neb. 294. See, also, prior opinion in
the same case, 53 Neb. 348.) Questioning the witness,
when considered in connection with the remarks that
were made by the trial judge, was doubtless error, and
that which was prejudicial, in that the jury, or individual
jurors, might be induced by it all to conclude that the
court had opinions in regard to the rights of the parties
which were shadowed forth or indicated, to some extent
at least, by its question and language in response to the

objection thereto; but the court, as we have quoted on the next day, admonished the jury that the matter was wholly one between it and the counsel and not to be considered by the jurors. This admonition was full and complete and must have robbed the prior happenings of any harmful force they may have possessed. (*Bartley v. State*, 53 Neb. 348; *Hoover v. State*, 48 Neb. 184.)

It is urged that the court erred in giving in charge to the jury instructions numbered 5 and 6. To instruction numbered 5 there was no exception at the time it was given; hence the assignment relative to it must be disregarded. The portion of the one numbered 6 which is claimed to be objectionable is as follows: "But if plaintiff has proved all the other facts necessary to a recovery, and has not shown by his own evidence in making out his case that he contributed to the injury by his own negligence, then your verdict should be for the plaintiff." Counsel insist that the effect of this was to exclude from the consideration of the jury all the evidence which might have tended to show contributory negligence which was given on behalf of defendant in error, except such as he himself personally gave. There is an inaptness of expression in the language we have quoted which renders it liable to the construction contended for by counsel; to say the least, it involves an ambiguity, and jurors may have interpreted it as does counsel, but, when read in connection with all the other portions of the charge which treated specifically of the same subject-matter of the issues, we doubt whether it can be given the importance as an error attached to it by counsel.

There are several other errors presented which refer to admission and exclusions of evidence to portions of the charge to the jury, and connected therewith a question is argued in which there is involved an attack on the sufficiency of the petition to admit of the litigation herein of one of the issues of which there was testimony and notice in the instructions, but as the cause must be remanded for a new trial, we deem it unnecessary to dis-

cuss these points; if errors, they will probably not occur again. It follows from what has been stated that the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.