286 N.W.2d 740 (1980)
205 Neb. 153
FOREMOST INSURANCE COMPANY, a corporation, as assignee of Foremost Life Insurance Company, a corporation, Appellee,
v.
ALLIED FINANCIAL SERVICES, INC., a corporation, Appellant.
No. 42448.
Supreme Court of Nebraska.
January 3, 1980.
*741 Jeffrey A. Silver, Omaha, for appellant.
Robert D. Mullin, Jr., of Boland, Mullin & Walsh, Omaha, for appellee.
*742 Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.
BRODKEY, Justice.
This is an action brought by Foremost Insurance Company, a corporation, hereinafter referred to as "Foremost," as assignee of Foremost Life Insurance Company, a corporation, hereinafter referred to as "Foremost Life," against Allied Financial Services, Inc., a corporation, hereinafter referred to as "Allied," based upon an alleged breach of an agency contract entered into between Foremost Life and Allied, to recover premiums and unearned commissions allegedly due and owing to Foremost under the terms of the agency agreement referred to. At the close of the evidence at the trial, on motion of the plaintiff Foremost, the trial court directed a verdict on the question of liability and submitted only the issue of damages to the jury, which returned a verdict in favor of plaintiff Foremost in the amount of $28,220.68. We affirm.
It appears from the record that on June 1, 1972, Allied entered into an agency agreement with Foremost Life to act as a general agent for Foremost Life in the solicitation of credit life insurance from purchasers of mobile homes and recreational vehicles in several states. Although the original agency contract was entered into in the name of "Allied Insurers, Inc.," the record reveals that the parties in this litigation have treated Allied Financial Services, Inc., and Allied Insurers, Inc., as the same entity; and we shall likewise do so in this appeal. The insurance policies issued by Foremost Life from business generated by its general agent, Allied, as set forth above, obligated the insurer, Foremost Life, to pay off the obligation of the debtor on the item purchased in the event the debtor should die prior to the full payment of the amount due to the creditor on the purchase of the item. Premiums for such insurance policies were collected in full at the inception of the policy and covered the entire term of the contract.
According to evidence in the record, it appears that between 50 and 75 percent of all credit life insurance policies are canceled prior to reaching full term as a result of early payment of the obligation by the debtor. When cancellation occurred, that portion of the premium corresponding to the unearned portion under the policy was rebated to the debtor. Prior to the cancellation of the agency agreement by Foremost Life on or about November 1, 1975, the rebate upon the early cancellation of a policy was usually made by Allied. A corresponding credit representing unearned premiums, previously transmitted by Allied to Foremost Life, was thereafter made to Allied's account by Foremost Life. In the event the debtor made a request directly to Foremost for a rebate of unearned premium, Foremost Life would make the rebate and would not credit Allied's account.
Under the terms of the agency agreement, it was required that Allied remit to Foremost Life the premiums collected on credit life policies which it had generated within 45 days after the end of the month in which the policy was issued. Allied was to receive a commission of 40 to 55 percent of the gross premiums collected on the policies solicited by it, depending upon which state the insurance policy was sold in. The agency agreement further provided that Allied could deduct the amount of its commissions from the gross premiums on the insurance prior to remitting the balance of the premiums to Foremost Life. It is clear that a portion of the unearned premium returned to the debtor upon early cancellation of the policy represented the commission which Allied had withheld, but which was, as yet, unearned. Of course, if the rebate was issued by Allied to the customer, as was normally true, no adjustment for unearned commissions in Allied's account with Foremost Life would be required. If, however, Foremost Life issued the rebate, a portion of the commission which Allied had retained would be unearned; and in that situation, Allied would be liable, under the terms of the agency agreement, to Foremost Life for that portion of the unearned commission included in the premium which *743 Foremost Life had remitted directly to the customer.
As previously stated, the agency relationship in question continued unchanged between Foremost Life and Allied until October 15, 1975, when Foremost gave written notice of termination under the terms of the agency agreement. This termination became effective on or about November 1, 1975. After that date, Allied did not solicit new insurance business on behalf of Foremost Life, although there was "business in the pipeline" still being processed with respect to policies sold prior to the termination of the agency agreement, and as to that business the agreement remained in effect.
In its written notice of termination, Foremost Life made demand on Allied for: "All monies due from the Company to you for commissions on insurance written before the date of termination of agreement and all monies due or hereafter becoming due from you to the Company for refunds of commissions and expense allowances by reason of premium refunds on cancellation or policies written before the date of termination of agreement shall be paid by the Company to you, or by you to the Company, as the case may be, notwithstanding the termination of the agreement." Allied tendered two payments, representing the amounts due under the September and October 1975, monthly billing statements. No further payments were tendered; neither were monthly statements issued by Foremost Life to Allied after January 1976.
In its petition filed in this action on December 13, 1975, Foremost Life alleged that Allied had withheld "premiums" due Foremost Life, contrary to the agency agreement. Nothing was stated in the original petition with reference to "unearned commissions." Just prior to trial on October 16, 1978, Foremost was permitted by the court to amend the pleadings to allege the withholding of "premiums and/or unearned commissions."
There was little conflict in the evidence adduced at the trial, except as to the issues of which party was required to and did issue the rebates subsequent to the termination of the agency agreement on November 1, 1975, and whether Allied had remitted all of the premiums and unearned commissions due to Foremost Life.
On the question of who issued the rebates following the termination of the agency agreement, Foremost Life's employees testified that Foremost Life did so. This testimony was supported by computer accounting records reflecting rebates paid by Foremost Life, and more particularly by a letter from an employee of Allied, dated November 5, 1976, stating that from that date on all rebates would be the responsibility of Foremost Life. On the other hand, officers of Allied testified that it was the "general policy" of the company to handle all rebates, even those solicited under the terminated agreement. These witnesses also indicated that this policy was in effect at the time of the trial "to the best of their knowledge." However, they produced no records of Allied to corroborate this testimony; and, as a matter of fact, Allied's accountant testified at the trial that he had never checked Allied's records against the records of Foremost Life to determine whether Foremost Life's records were accurate and reflected the records of Allied in this matter.
Similar problems were encountered with regard to the repayment of unearned commissions and transmittal of premiums. Witnesses for Foremost Life gave testimony, corroborated by the computer business records of the company, that Allied was indebted to Foremost Life for repayment of unearned commissions and the payment of premiums never transmitted to Foremost Life. Allied's witnesses testified to the contrary.
As previously stated, the trial court directed a verdict on the question of liability and submitted the question of damages to the jury, which returned a verdict for the plaintiff in the amount of $28,220.68.
As its first assignment of error on appeal, Allied contends that it was error for the court to direct a verdict in favor of *744 Foremost Life on the question of liability. It is well settled law in this state that the party against whom a verdict is directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. It is only when the facts are conceded, undisputed, or are such that reasonable minds can draw but one conclusion therefrom that the trial court must decide the question as a matter of law and not submit it to a jury. Stevens v. Kasik, 201 Neb. 338, 267 N.W.2d 533 (1978); Clark Bilt, Inc. v. Wells Dairy Co., 200 Neb. 20, 261 N.W.2d 772 (1978). It is also the rule that to justify the direction of a verdict, it is not necessary that there should be literally no evidence to go to the jury, it being sufficient that there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established. Department of Banking v. Lawhead, 181 Neb. 722, 150 N.W.2d 734 (1967); Reynolds v. Knott, 164 Neb. 365, 82 N.W.2d 568 (1957). We have also held that clear, uncontradicted, self-consistent, and unimpeached business records of a party having initial production and persuasion burdens may suffice for a directed verdict in his favor. Watkins Products, Inc. v. Keane, 185 Neb. 424, 176 N.W.2d 230 (1970). A review of the evidence in the record in this case convinces us that there is only one reasonable conclusion to draw therefrom, and that is that Allied did not remit unearned premiums to the insured, nor did Allied remit all premiums to Foremost Life or any unearned commissions to Foremost Life.
With regard to the issue of the unearned commissions, Allied's president acknowledged in his testimony that the early cancellation of credit life policies would create unearned commissions which Allied would be required to repay. He further testified that Allied had "never paid back commissions to Foremost." The agency agreement provided that: "In the event of cancellation or reduction of premium, Agent shall be liable for return commission computed at the same rate on the return premium as Agent received on full written premium upon issuance of the policy." Allied made no payments to Foremost Life after January 1976, and yet recognized that policies were prematurely canceled following that date. The only reasonable conclusion that can be reached is that under the terms of the agency agreement Allied was indebted to Foremost Life for some amount or amounts because of its failure to remit unearned commissions to Foremost Life. The breach of contract by Allied was clearly shown to exist from the evidence adduced, and the amount of its liability for such breach was left by the court to the jury for determination.
We reach a similar conclusion on the question of premiums due under the agreement. Foremost Life introduced business records evidencing premiums that Allied had failed to transmit to Foremost Life as per the agency agreement. Allied's witnesses testified that their general practice was to transmit these premiums to Foremost Life within 45 days after the solicitation of the policies. However, Allied did not introduce any evidence which contradicted the business records of Foremost Life to any appreciable extent. The rule is that the defense of payment is an affirmative defense and the burden of proving it is on the party alleging it. Department of Banking v. Lawhead, supra. Under the evidence, Foremost Life established a prima facie case of breach of contract, which remained unrebutted by Allied. The conclusion is inescapable that Allied failed to remit all the premiums to Foremost Life as it was required to do under the terms of the agency agreement; and we conclude that liability with reference to unpaid premiums was established by Foremost Life. We therefore reject Allied's claim that the trial court erred in directing a verdict for Foremost Life on the issue of liability.
Allied also contends that the trial court erred in instructing the jury that Foremost Life had established as a matter of law that Allied had breached the agency agreement and in directing the jury to determine only the amount of damages. This assignment of error is likewise without merit for the reasons previously stated.
*745 The next three assignments of error all pertain to the action of the trial court in permitting Foremost Life to amend its pleadings just prior to trial. As previously indicated, in its original petition, Foremost Life had alleged Allied had withheld "premiums" and prayed judgment for the amount of the premiums wrongfully retained. Nothing was stated in the original petition with reference to unearned commissions due and owing. On September 26, 1978, Foremost Life was granted leave to amend its petition to update the amount of damages due as of September 30, 1978. The amended petition was filed on October 16, 1978, the date of trial. In the amended petition, Foremost Life alleged that Allied withheld premiums and/or unearned premiums due Foremost Life in violation of the agency agreement. However, in the prayer of the petition, Foremost Life prayed for a judgment in the amount of the premiums and unearned commissions due it by reason of Allied's breach of the agency contract. After both sides had rested, Foremost Life was permitted by the court to amend its amended petition to conform to the proof, as the case had been tried on the theory of commissions due and owing, as well as for premiums.
Allied contends that the court erred in permitting the amendment, as the lateness of the amendment created a new issue substantially different from the issue of unpaid premiums, and that Allied was not prepared to defend against the issue of commissions. The right to amend pleadings rests within the sound discretion of the trial court and the allowing of the amendment will not be error unless prejudice resulted. Stungis v. Union Packing Co. of Omaha, Inc., 196 Neb. 126, 241 N.W.2d 660 (1976); State Securities Co. v. Corkle, 191 Neb. 578, 216 N.W.2d 879 (1974). Section 25-852, R.R.S.1943, provides: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading * * * by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." This court has likewise said that, in furtherance of justice, the trial court may exercise its discretion in granting an amendment at any stage of the proceedings, even after the parties rest. Swan v. Bowker, 135 Neb. 405, 281 N.W. 891 (1938). Amendments have even been allowed when the action was before this court on appeal. See, Lippire v. Eckel, 178 Neb. 643, 134 N.W.2d 802 (1965).
The record reveals that Allied had knowledge of the extent of Foremost Life's claims as early as October 15, 1975, the date of the notice of the termination of the agency agreement. At that time, Foremost Life demanded payment of commissions retained by Allied under the agreement, which commissions subsequently became unearned due to early policy cancellations.
Allied further had knowledge that Foremost Life was bringing the action for breach of the agency agreement. This agreement included language with reference to remitting unearned commissions to Foremost Life. Further, Allied was advised through the process of discovery as to the amount of the recovery sought by Foremost Life. This amount was greatly in excess of the amount initially sought with respect to the claim for unpaid premiums. All the foregoing occurred more than one year prior to the date of trial. We think it is clear that Allied was aware of Foremost Life's claim against it, including a claim for unearned commissions due and owing it. Furthermore, Allied has not demonstrated that any prejudice resulted to it as a result of the court permitting the amendment to be made after the parties had rested. We therefore reject Allied's claim of error in this regard.
Finally, Allied has assigned two errors relating to purported prejudicial conduct on the part of the trial court, and cites as examples certain questions asked of the witnesses by the court, as well as certain comments made by the court during the trial, which it claims were prejudicial. We have held that in the trial of a cause before a jury, improper comments by the trial *746 judge from the bench may be prejudicially erroneous where they tend to discredit a witness and his testimony. Styskal v. Brickey, 158 Neb. 208, 62 N.W.2d 854 (1954); Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N.W.2d 168 (1944). Our latest statement of the principles involved is found in Coyle v. Stopak, 165 Neb. 594, 86 N.W.2d 758 (1957), where this court stated: "`We see no impropriety in a trial court interrogating witnesses regarding a fact under investigation, when the tendency is only to develop the truth, and is calculated in nowise to influence the jury, save as the testimony will assist them to arrive at a correct conclusion on the questions of facts in issue.' Leo v. State, 63 Neb. 723, 89 N.W. 303, 304. See, also, Buhrman v. Smollen, [164 Neb. 655, 83 N.W.2d 386] supra.
"However this right ` * * * should be very sparingly exercised, and, generally, counsel for the parties should be relied on and allowed to manage and bring out their own case. The actions of the judge in this respect should never be such as to warrant any assertion that they were with a view to assistance of the one or the other party to the cause.' Bartley v. State, 55 Neb. 294, 75 N.W. 832, 834. See, also Omaha Brewing Assn. v. Bullnheimer, 58 Neb. 387, 78 N.W. 728.
"However, ` * * * the judge presiding at a trial must conduct it in a fair and impartial manner, he should refrain from making any unnecessary comments or remarks during the course of a trial which may tend to a result prejudicial to a litigant or are calculated to influence the minds of the jury. A remark or comment which is shown to be prejudicial to the rights of the party complaining, or which is such that it may be assumed prejudice will result therefrom, is fatal to the validity of the trial; * * *.' 64 C.J. Trial, § 91, p. 90, and cited with approval in Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N.W.2d 168, 171, and Styskal v. Brickey, supra. See, also, 88 C.J.S. Trial § 49, p. 124."
We have carefully examined all the alleged incidents of misconduct on the part of the trial judge referred to in Allied's brief on appeal, and conclude that they either were legitimate rulings upon evidentiary objections made during the trial or were efforts to clarify the evidence. We do not believe that any of the conduct complained of tended to magnify the evidence of witnesses for Foremost Life or diminished the credibility of the witnesses for Allied, nor in any way prejudiced the jury in making their decision upon the amount due for the breach of the contract, which was the only issue before them. We likewise reject this assignment of error.
No other errors being assigned or appearing of record, we therefore affirm the actions and judgment entered by the trial court.
AFFIRMED.