RICHARD A. WOODSMALL, APPELLANT, v. MARIJO, INC., A NEBRASKA CORPORATION, DOING BUSINESS AS MARIJO STABLES, AND JOSEPH CIESLIK, APPELLEES.

293 N. W. 2d 378

Filed June 10, 1980. No. 42755.

Mary Cannon Veed of Matthews & Cannon, P.C., for appellant.

Walsh, Walentine & Miles, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

This is an action brought by Richard A. Woodsmall, plaintiff below and appellant herein, against Joseph Cieslik and Marijo, Inc., doing business as Marijo Stables, defendants below and appellees herein, for personal injuries suffered as the result of certain negligent actions on the part of Joseph Cieslik and Marijo, Inc. At the conclusion of the plaintiff's case, the trial court directed verdicts in favor of both Cieslik and Marijo, which orders have been ap-

pealed to this court. We reverse and remand.

It appears from the record that Woodsmall was a logistics officer on the Airborne Command Post of the U.S. Air Force. In an effort to find an occupation which he might engage in after his retirement from the service, Woodsmall answered an advertisement placed by Marijo for a stable manager and he attained the position in August 1975. Marijo, a corporation entirely owned by Cieslik and his wife, at that time operated a livery stable with a capacity for housing 20 horses, although only about 6 horses were being boarded at the time Woodsmall became stable manager. As compensation for this position, Woodsmall received a small salary as well as free board for two horses which he owned.

Shortly after Woodsmall began his employment with Marijo, he became aware of the fact that Marijo's reputation as a stable was not the best and he desired to improve Marijo's reputation and build up the business into a profitable operation. To further these goals, Woodsmall and Cieslik agreed to build a pole barn for the purpose of increasing the capacity of the stables. It was further agreed that the cost of construction would be divided between the two men.

Construction on the structure began on December 4, 1975. The two men were using a post hole auger driven by a tractor-mounted power take-off to dig the holes for the supporting structure of the shed. Both the tractor and auger were the property of a plumbing company owned and operated by Cieslik, although the tractor had been used previously by Woodsmall in connection with his Marijo duties. The two men dug four or five holes, with Cieslik operating the tractor and Woodsmall aligning the post hole auger. After the first hole, Cieslik directed Woodsmall to place pressure on a bar mounting the auger to the tractor to assist the auger in commencing the hole and told Woodsmall:

You're going to have to apply pressure to

the bar to help it get started. It won't dig or grasp by itself. . . . Be aware that is a dangerous piece of equipment. Keep free of the auger as much as you can, but we've still got to get pressure on the top to get it started.

Woodsmall admitted receiving these directions. Woodsmall noted, however, that he was required to exert greater pressure on each hole than he had on the prior hole to get the auger to start digging.

The evidence reveals that, on the last hole, Woodsmall's clothing became entangled on a bolt holding the universal joint of the driveshaft onto the gear box of the auger. Before the power take-off could be disengaged and stopped, Woodsmall sustained abdominal injuries, resulting in the loss of his spleen and the permanent loss of certain abdominal muscles. Woodsmall was incapacitated for approximately 2 months, after which time he returned to his Air Force duties. He subsequently returned to work for Marijo and continued working there until late June 1976.

Woodsmall thereafter commenced this action, alleging in his second amended petition that Cieslik was negligent in failing to properly instruct Woodsmall in the safe operation of the auger, in failing to maintain a proper lookout so as to be able to stop the machinery when Woodsmall became entangled, in failing to provide safe equipment, and in failing to use the safety shield provided by the manufacturer of the equipment. Woodsmall further alleged that Marijo was negligent in failing to provide safe equipment and that the negligent actions of Cieslik should be imputed to Marijo, his principal. Cieslik answered, denying Woodsmall's claims and affirmatively alleging that Woodsmall's injuries were caused by contributory negligence and assumption of the risk. Marijo also denied Woodsmall's claims and alleged that any injuries resulted from Woodsmall's contributory negligence. Following presen-

tation of Woodsmall's evidence, Cieslik and Marijo both moved for directed verdicts in their favor. The trial court granted Marijo's motion on the following grounds: (1) That, if an employer-employee relationship existed between Marijo and Woodsmall, no subject matter jurisdiction existed in the District Court, because such jurisdiction would be vested exclusively in the Nebraska Workmen's Compensation Court; (2) That Woodsmall failed to prove that Marijo provided unsafe equipment because the equipment was, in fact, the property of the plumbing company; and (3) That Woodsmall was guilty of contributory negligence. The trial court granted Cieslik's motion on the grounds: (1) That even if an unreasonable risk of danger existed, Cieslik discharged any duty he owed to Woodsmall by giving him adequate warning as to the danger; and (2) That the evidence established that Woodsmall had been contributorily negligent. Woodsmall has appealed these rulings, contending that the lower court committed error, as hereinafter discussed.

Woodsmall first contends that the trial court committed error in directing a verdict for Marijo on the ground that it lacked jurisdiction over the subject matter of the action. See *Peak v. Bosse,* 202 Neb. 1, 272 N.W.2d 750 (1978). Specifically, Woodsmall contends that the finding that the action was outside the court's jurisdiction because of the provisions of the workmen's compensation act was erroneous because the pleadings filed in this action do not contain any allegations whatsoever of an employment relationship between Woodsmall and Marijo and no such relationship was claimed or even raised as an issue at the trial.

We believe that Woodsmall has misconstrued the order of the trial court. In ruling on the motions for directed verdicts, the trial court stated:

> *[I]f* in fact there's an employee-employer relationship, then this court doesn't have

> jurisdiction. The sole jurisdiction is vested in the Workmen's Compensation Court, and all other rights, liabilities, and so forth of the various parties, the employer-employee, are vested there and they're exclusive and they cannot maintain an action at law. (Emphasis supplied.)

The operative word, of course, is "if." We believe that the trial court was expressing a concern with regard to whether the action was being presented in the proper forum and was not ruling that it had no subject matter jurisdiction. Clearly, if that were the situation, the proper action for the trial court to take would have been to dismiss the action on that ground and not to direct verdicts on the merits. We are, therefore, convinced that the trial court did not base its direction of the verdicts on the jurisdictional grounds.

However, even assuming *arguendo* that the trial court did direct a verdict on the ground that it had no subject matter jurisdiction over this matter, we cannot conclude from a review of the record that an employment relationship existed between the parties at the time of the accident and, therefore, the trial court did have subject matter jurisdiction. On oral argument, the parties have agreed that none of them was claiming or contending that an employment relationship existed between Woodsmall and Marijo at any time. We recognize, however, that, notwithstanding this fact, the rule is clear that parties to an action cannot confer subject matter jurisdiction on a judicial tribunal by either acquiescence or consent. See, *Anderson v. Story,* 53 Neb. 259, 73 N.W. 735 (1898); *Plunkett v. Parsons,* 143 Neb. 535, 10 N.W.2d 469 (1943); *Ostler v. City of Omaha,* 179 Neb. 515, 138 N.W.2d 826 (1965). From our review of the record, we do not believe that the parties have attempted to do so in this case.

The evidence is somewhat conflicting as to the re-

lationship of the parties at the time of the injury. Woodsmall and his wife both testified that they were "employed" by Cieslik, not Marijo. While it is true that discussions with regard to the construction of a pasture barn were initiated because the stable had been forced to turn away prospective business because of a lack of space, it is likewise true that the discussions which resulted in the ultimate decision to build were prompted by a business opportunity beneficial to Woodsmall. Woodsmall testified that Cieslik was in charge of the construction of the structure and that the latter was directing his actions at the time of the accident. Cieslik, on the other hand, testified that Woodsmall had *hired* him for the specific job of excavating the holes for the pole barn. It is important to note, however, that not only did Woodsmall offer to split the costs of construction of the structure, but he also provided materials for the roof. It would seem highly unlikely that an employee would offer to split the costs of construction of a facility with an employer, where that facility was built solely for the benefit of the employer. Therefore, even assuming that the trial court did find that an employment relationship existed between Woodsmall and Marijo, we believe that such finding was clearly against the weight of the evidence and was clearly wrong. However, since the trial court also based its findings on other grounds, we must also examine the other reasons given for the direction of a verdict in Marijo's favor.

The court directed its verdict in favor of Marijo for the reason that it found Woodsmall to be contributorily negligent as a matter of law. Woodsmall contends that such finding was erroneous and that the evidence created a jury question on this issue. The rule is well established that the party against whom a verdict is directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably

be drawn from the evidence presented. See, *Novotny v. McClintick, ante* p. 99, 291 N.W.2d 252 (1980); *Foremost Insurance Company v. Allied Financial Services, Inc.,* 205 Neb. 153, 286 N.W.2d 740 (1980). Ordinarily, questions of negligence, contributory negligence, and assumption of the risk are for the trier of facts, but where reasonable minds can draw but one conclusion from the facts adduced with regard to those issues, a directed verdict is proper. See, *Garcia v. Howard,* 200 Neb. 57, 262 N.W.2d 190 (1978); *McCready v. Al Eighmy Dodge,* 197 Neb. 684, 205 N.W.2d 640 (1977). However, the trial court should only decide a question as a matter of law, and not submit the issue to the jury, when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Foremost Insurance Company v. Allied Financial Services, Inc., supra; Stevens v. Kasik,* 201 Neb. 338, 267 N.W.2d 533 (1978).

From our review of the record, we believe the trial court was in error in finding Woodsmall to be contributorily negligent as a matter of law. It is the rule, as this court has often stated, that a person who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is negligent or contributorily negligent. See, *Garcia v. Howard, supra; Krehnke v. Farmers Union Co-Op. Assn.,* 199 Neb. 632, 260 N.W.2d 601 (1977). It is also the rule that to constitute want of due care, it is not required that a person should have anticipated the precise risk which occurred; it is sufficient that he placed himself in a position of known danger where there was no need for him to be, or that he knew or should have known that substantial injury was likely to result from his act. See, *Jensen v. Hawkins Constr. Co.,* 193 Neb. 220, 226 N.W.2d 346 (1975); *Omaha Nat. Bank v. Omaha P. P. Dist.,* 186 Neb. 6, 180 N.W.2d 229 (1970).

In this case, however, we believe that a jury question was presented with regard to whether Woodsmall placed himself in an area of known danger. Woodsmall's expert witness testified that, if a person had knowledge of the rotating driveshaft and the bolt connecting the driveshaft to the gear box of the post hole auger, that person would have knowledge of a hazard. He further testified that the bolt was very difficult to see when the equipment was operated under conditions similar to those in existence at the time of the accident and that the universal joint tended to take on the appearance of a solid, round object when rotating. He likewise stated that hazardous conditions existed on the equipment in three areas, i.e., the actual auger blades, the rotating universal joint, and the rotating bolt connecting the universal joint to the gear box of the equipment. There is evidence that Woodsmall had little mechanical knowledge, although he had received a college degree in sociology. He testified that he was not aware of the existence of either the rotating universal joint or the bolt connecting it to the auger's gear box. Moreover, he testified that he understood Cieslik's warning of danger to be directed solely toward the actual blades of the equipment. Cieslik admitted on redirect examination that his warning did not include the bolt or the universal joint. We believe that a question existed as to whether Woodsmall's actions constituted more than slight negligence when compared to the negligent actions, if any, of Cieslik and/or Marijo. Those questions are for determination by the trier of facts upon a consideration of all the evidence. We conclude that the trial court erred in directing the verdict for Marijo and Cieslik on this ground.

Finally, the trial court directed a verdict in favor of Marijo on the ground that Woodsmall failed to establish that the equipment was, in fact, owned by Marijo. While it is true that the equipment was pur-

chased by an entity other than Marijo, it is likewise true that Cieslik provided the tractor for the digging of the post holes and that Woodsmall had used the same tractor and other equipment in the furtherance of Marijo's business on prior occasions. We believe that a question of fact was created by the evidence which requires resolution by the trier of facts and that the trial court committed error in directing a verdict for Marijo on this issue.

With regard to the direction of a verdict in favor of Cieslik, we believe it stands in no better light. As earlier indicated, a fact question existed with reference to the contributory negligence of Woodsmall, if any. We believe it was error to remove that question from the jury's consideration. Likewise, we are not convinced that reasonable minds could draw only one conclusion with reference to the warning issued to Woodsmall by Cieslik. *Fangmeyer v. Reinwald,* 200 Neb. 120, 263 N.W.2d 428, (1978); *Krehnke v. Farmers Union Co-Op. Assn., supra; C.C. Natvig's Sons, Inc. v. Summers,* 198 Neb. 741, 255 N.W.2d 272 (1977). We believe that the jury should have had the opportunity to determine exactly what danger Cieslik warned Woodsmall about and whether that warning encompassed the ultimate cause of Woodsmall's injury. The trial court likewise committed error in this regard.

For the reasons stated above, we reverse the judgment of the trial court and remand this matter for a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

CLINTON, J., not participating.

BOSLAUGH, J., dissenting.

In my opinion, the negligence of the plaintiff was more than slight as a matter of law.